IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Deborah V. Hubbard, *aka* Deborah Videtto Hubbard, *aka* Deborah Hubbard-Sarvis, ) ) ) | Case No. 8:14-cv-00033-BHH-JDA |
| Plaintiff, ) | |
| v. ) ) | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| William Byars, Jr.; Judy Anderson; T. Tyler; ) D. Foulks; Sadi Rafi, ) | |
| Defendants. ) | |

This matter is before the Court on a motion for summary judgment filed by Defendants [Doc. 25] and a motion for temporary restraining order filed by Plaintiff [Doc. 40].  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

Plaintiff, proceeding pro se, filed this action on January 2, 2014, alleging violations of her constitutional rights pursuant to 42 U.S.C. § 1983.[1]  [Doc. 1.]  Defendants filed a motion for summary judgment on April 21, 2014.  [Doc. 25.]  By Order filed the same day, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the dismissal/summary judgment procedure and the possible consequences if she failed to adequately respond to the motion.  [Doc. 26.]  After being granted extensions of time to

---

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988). Accordingly, this action was filed on January 2, 2014.  [Doc. 1-8 at 1(envelope stamped as received by the prison mail room on January 2, 2014).]

respond, Plaintiff filed a response in opposition on October 1, 2014 [Doc. 81] and submitted additional attachments on October 8, 2014 [Doc. 83].  Plaintiff filed a motion for temporary restraining order ("TRO") on May 29, 2014.  [Doc. 40.]  Defendants filed a response in opposition on May 30, 2014.  [Doc. 46.]  The motions are ripe for review.

## BACKGROUND[2]

At all times relevant to the factual allegations underlying this action, Plaintiff was in the custody of the South Carolina Department of Corrections ("SCDC") and housed at Camille Griffin Graham Correctional Institution ("Graham").  [Doc. 1 at 2.]  Plaintiff alleges she was assaulted by another inmate, Inmate Moore, on August 5, 2012, and that she reported to medical approximately ten to fifteen times with complaints but was not seen by Defendant Sadi Rafi ("Dr. Rafi") until approximately six months after the alleged assault and was not x-rayed until approximately seven-and-one-half months after the alleged assault.  [*Id.* at 3.]  Additionally, Plaintiff alleges Dr. Rafi has inadequately treated Plaintiff's medical problems by substituting her judgment for that of a specialist, by denying Plaintiff medication that a specialist prescribed, and by recommending exercise and weight loss after learning that Plaintiff had fractures in her lower lumbar.  [*Id.* at 3, 7–8.]

Plaintiff alleges that Defendant D. Foulks[3] ("Officer Foulks") witnessed Inmate Moore assault another inmate approximately fifteen minutes before Inmate Moore assaulted Plaintiff, but Officer Foulks failed to restrain Inmate Moore and even released Inmate

---

[2]The facts included in this Background section are taken directly from Plaintiff's Complaint.

[3]Although Plaintiff refers to this Defendant as "D. Foulk," Defendants' filings clarify that the officer's name is "Foulks."  [Doc. 25-6.]  Accordingly, the Court will refer to this Defendant as Officer Foulks.

2

Moore after other inmates had restrained her. [*Id.* at 7.] Plaintiff contends Defendant Tyler ("Sergeant Tyler") failed to respond or assist in restraining Inmate Moore, failed to attempt to get Plaintiff medical assistance, and failed to properly ensure that Officer Foulks was trained. [*Id.* at 5–6.] Additionally, Plaintiff asserts that Sergeant Tyler continues to harass Plaintiff. [*Id.* at 6.]

Plaintiff alleges Defendant Judy Anderson ("Warden Anderson") placed Plaintiff and other inmates in danger by assigning only one correctional officer per approximately 90 inmates even though Warden Anderson was aware of the risks that inmates face. [*Id.* at 5.] Plaintiff also contends Warden Anderson failed to ensure that her staff was properly trained, including the medical staff under her supervision. [*Id.*] Plaintiff alleges that Defendant William Byars ("Director Byars") failed to ensure that his staff was properly trained, which lead to Plaintiff's injuries and inadequate medical care. [*Id.* at 4.]

Plaintiff alleges that the assault on August 5, 2012, and the inadequate medical care following the assault have resulted in permanent damage to Plaintiff's physical and emotional well being. [Doc. 1.] Finally, Plaintiff alleges that Inmate Moore has been placed in housing near Plaintiff's cell, causing further damage because Plaintiff constantly fears another physical attack by Inmate Moore. [*Id.* at 9.] She seeks a declaration that Defendants' acts and omissions violated Plaintiff's rights under the laws and Constitution of the United States; an order directing Defendants to allow Plaintiff to be examined by the doctors of her choice, with costs being paid by Defendants; a TRO against any retaliatory measures, harassment, bogus charges, etc.; a walker with wheels, seat, basket, and wheel chair; a Black's Law Dictionary and up-to-date set of law books; compensatory damages

of $75,000, as well as punitive damages of $20,000 per month beginning August 5, 2012 until this case is resolved, and other damages this Court deems feasible; court costs, all costs debited from Plaintiff's account for medical and legal materials from August 5, 2012, until this case is resolved, and attorneys' fees; and other just and equitable relief that this Court deems necessary.  [*Id.* at 10–11.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe her pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so.  *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the plaintiff's legal arguments for her.  *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law.  Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating

4

federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting

*Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Accordingly, a civil action under § 1983

allows "a party who has been deprived of a federal right under the color of state law to seek

relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects, or
> causes to be subjected, any citizen of the United States or any
> person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must prove two elements:

(1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and

laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this

constitutional right under color of [State] statute, ordinance, regulation, custom, or usage."

*Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original)

(citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action"

requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured
> by the Constitution are protected only against infringement by
> governments.  This fundamental limitation on the scope of
> constitutional guarantees preserves an area of individual
> freedom by limiting the reach of federal law and avoids
> imposing on the State, its agencies or officials, responsibility
> for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658

(4th Cir. 1998)) (internal citations and quotation marks omitted).  Nevertheless, "the deed

5

of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact and (2)

6

he is entitled to judgment as a matter of law.  As to the first of these determinations, a fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue.  *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion.  *Anderson,* 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  Further, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported
> as provided in this rule, an adverse party may not rest upon the
> mere allegations or denials of the adverse party's pleadings,
> but the adverse party's response, by affidavits or as otherwise
> provided in this rule, must set forth specific facts showing that
> there is a genuine issue for trial. If the adverse party does not
> so respond, summary judgment, if appropriate, shall be
> entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the

non-movant, he must produce existence of every element essential to his action that he

bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Motion for Summary Judgment**

### *Exhaustion of Administrative Remedies*

Defendants argue they are entitled to summary judgment because Plaintiff failed to

properly exhaust her administrative remedies before filing this action. [Doc. 25-1 at 15–16.]

The Court disagrees.

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no

action shall be brought with respect to prison conditions under section 1983 of this title, or

any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility

until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

As the Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the
> quantity and improve the quality of prisoner suits; to this
> purpose, Congress afforded corrections officials time and
> opportunity to address complaints internally before allowing the
> initiation of a federal case. In some instances, corrective action
> taken in response to an inmate's grievance might improve
> prison administration and satisfy the inmate, thereby obviating

8

the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted). Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 524, 532. The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance process). *But see Jones*, 549 U.S. at 219–24 (rejecting "total exhaustion rule" and holding that when presented with a complaint containing exhausted and unexhausted claims, courts should "proceed[] with the good and leave[] the bad"). Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes Step 2 of the South Carolina Department of Corrections ("SCDC") grievance procedure, and § 1997e(a) does not require inmates to further appeal to South Carolina's

Administrative Law Court.  *See, e.g.*, *Ayre v. Currie*, No. 05-3410, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007);  *Charles v. Ozmint*, No. 05-2187, 2006 WL 1341267, at *4 (D.S.C. May 15, 2006).

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint.  *Jones*, 549 U.S. at 211–12; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005).  However, to survive a motion for summary judgment asserting he failed to exhaust, the inmate is required to produce evidence in response to the motion that refutes the claim that he failed to exhaust.  *See Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010) (unpublished opinion) (holding that "to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial" (citing Fed. R. Civ. P. 56(e)(2))); *see also Celotex*, 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue).

Here, Defendants have failed to carry their burden of proof and demonstrate that Plaintiff failed to exhaust her administrative remedies. In their motion for summary judgment and response, Defendants argue that "Plaintiff never filed a grievance concerning the assault on August 5, 2012" and have submitted an affidavit of Martha Mack, Inmate Grievance Coordinator, averring the same.  [Docs. 25-1 at 16; 25-7 at 3 (emphasis in originals).]  Accordingly, Defendants argue that Plaintiff failed to exhaust her remedies. However, Plaintiff has submitted at least two grievances referencing the August 5, 2012 assault and resulting medical issues.  [Doc. 1-1 at 5–6.]  Although these grievances were

returned to Plaintiff unprocessed, Defendants have failed to (a) submit a grievance policy to the Court outlining the steps required to exhaust administrative remedies and explaining why these grievances did not properly exhaust those remedies[4] or (b) allege that Plaintiff knew or should have known about the grievance policy when she submitted these grievances. Therefore, given that the grievances were returned to Plaintiff unprocessed, the Court harbors doubt as to whether Plaintiff did in fact exhaust her administrative remedies; however, the Court is unable to conclude that Defendants have proven there is no material fact about Plaintiff's failure to exhaust. Accordingly, the Court will proceed to consider the claims on their merits.

### Eleventh Amendment Immunity

The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore,

---

[4]Courts have taken judicial notice of parts of the SCDC grievance policy, *see Cambron v. Harris*, Civil Action No. 3:11–cv–326–RMG–JRM, 2012 WL 1579580, at *2 (D.S.C. Apr. 11, 2012), but Defendants here argue that Plaintiff never filed a grievance related to the August 5, 2012 assault and the evidence reveals that Plaintiff submitted at least two grievances related to the assault. Considering this evidence, the Court finds it appropriate to consider Plaintiff's claims on the merits out of an abundance of caution.

Eleventh Amendment immunity protects state agencies and state officials sued in their official capacities from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, to the extent Plaintiff has alleged claims against Defendants in their official capacities, those claims must be dismissed because Defendants are entitled to immunity pursuant to the Eleventh Amendment.

### *Deliberate Indifference to Medical Needs*

Plaintiff alleges Dr. Rafi was deliberately indifferent to her serious medical needs by failing to see Plaintiff until approximately six months after the alleged assault, failing to order x-rays until approximately seven-and-one-half months after the alleged assault, and substituting her judgment for that of a specialist. [Doc. 1.] Defendants argue Plaintiff cannot show her medical problems were serious or that any Defendant was deliberately indifferent to Plaintiff's medical needs. [Doc. 25-1 at 4–8.] The Court agrees Dr. Rafi is entitled to summary judgment.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment and states a cause of action under § 1983 because deliberate indifference constitutes "the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104–05 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). Deliberate indifference exists when prison officials know of a substantial risk to a prisoner's health or safety and consciously disregard that risk. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990) ("Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either

known to the defendant or which would be apparent to a reasonable person in the defendant's position." (citation omitted)).  Within the United States Court of Appeals for the Fourth Circuit, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" to violate a prisoner's Eighth Amendment rights.  *Miltier*, 896 F.2d at 851.

To prevail on an Eighth Amendment claim, the prisoner must demonstrate (1) his medical condition was a sufficiently serious one[5] and (2) subjectively, the prison officials acted with a sufficiently culpable state of mind, which is satisfied by showing deliberate indifference by the prison officials.  *Goodman v. Wexford Health Sources, Inc.*, No. 09-6996, 2011 WL 1594915, at *1 (4th Cir. Apr. 28, 2011) (quoting *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998)).  As the United States Supreme Court has explained,

> Since, we said, only the "'unnecessary *and wanton* infliction of pain'" implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege "deliberate indifference" to his "serious" medical needs.  "It is *only* such indifference" that can violate the Eighth Amendment; allegations of "inadvertent failure to provide adequate medical care," or of a "negligent . . . diagnos[is]," simply fail to establish the requisite culpable state of mind.

*Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (emphasis and alteration in original) (citations omitted).  Further, in the context of prisoner medical care, the Constitution requires only that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of

---

[5]"A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990) (citing *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3rd Cir. 1987); *Hendrix v. Faulkner*, 525 F. Supp. 435, 454 (N.D. Ind.1981)).

treatment. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) (citing *Layne v. Vinzant*, 657 F.2d 468, 471 (1st Cir. 1981)); *see Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975) (citing *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir.1969); *Hirons v. Director*, 351 F.2d 613 (4th Cir.1965)) ("Prisoners are entitled to reasonable medical care."); *see also, e.g.*, *Barton v. Dorriety*, No. 9:10-cv-1362, 2011 WL 1049510, at *2 (D.S.C. Mar. 21, 2011) (citing *Jackson*, 846 F.2d at 817). The fact that a prisoner believed he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g.*, *Russell*, 528 F.2d at 319.

Assuming without deciding that Plaintiff can establish her medical needs were sufficiently serious, she has failed to establish a genuine issue of material fact remains as to whether Dr. Rafi acted with a sufficiently culpable state of mind. The medical records and Dr. Rafi's affidavit reveal that Plaintiff was escorted to medical on August 5, 2012 after Inmate Moore hit Plaintiff in the right cheek. [Doc. 25-2 at 2–3; Doc. 25-3 at 24.] During that visit with medical, Plaintiff showed no signs of swelling or bruising but was given an ice pack and ibuprofen to prevent pain and swelling. [Doc. 25-2 at 3; Doc. 25-3 at 24.] Plaintiff's medical records establish seventeen encounters,[6] including an outside appointment to the cardiology clinic, between August 5, 2012, the date of the assault, and February 14, 2013, the date Dr. Rafi ordered x-rays of Plaintiff's lumbar spine and both hips. [Doc. 25-3 at 21–24 (encounters 558–575).] However, the first notation of any

---

[6]Encounters appear to include appointments where inmates are seen by medical staff as well as notes made by medical staff after reviewing inmates' records, including changing medications and ordering lab work. Because, in this case, Plaintiff complains only about the medical treatment surrounding pain allegedly caused by the August 5, 2012 assault, the Court focuses its discussion on those medical encounters dealing with Plaintiff's complaints of pain.

complaints by Plaintiff with respect to her left side was on February 13, 2013.  [Doc. 25-3 at 21.]  Dr. Rafi ordered x-rays the following day.  [*Id.*]  The x-rays were taken on March 26, 2013, and showed degenerative changes in Plaintiff's low lumbar spine and bilateral sacroiliac joints - osteoarthritis and multilevel degenerative lumbar disc disease with small upper end plate fractures at L1–3.  [Doc. 25-2 at 4; Doc. 25-3 at 19–20.]

After reviewing the x-rays, Dr. Rafi ordered a referral to the ortho clinic and started Plaintiff on Fosomax.  [Doc. 25-2 at 4; Doc. 25-3 at 20.]  Plaintiff was seen by the ortho clinic on May 3, 2013.[7]  [Doc. 25-3 at 19.]  The doctor diagnosed Plaintiff with left lower extremity radiculopathy and ordered an MRI of the lumbar spine and x-rays of the left hip.  [Doc. 25-2 at 4; Doc. 25-3 at 19.]  The MRI and x-rays were taken on May 22, 2013.  [Doc. 25-3 at 17.]  The MRI revealed a mild old healed compression fracture deformity of the T11 vertebral body, a small mid-line extruded disc herniation at the T12-L1 level without root sleeve effacement or spinal stenosis, and degenerative L5-S1 disc narrowing with mild circumferential bulge of the annulus and mild to moderate productive faced changes noted without disc herniation, spondylolisthesisi, or spinal stenosis.  [Doc. 25-2 at 4–5.]  The ortho clinic doctor stated that no surgical intervention was needed and recommended discontinuing ibuprofen and starting Mobic.  [*Id.* at 5.]  Dr. Rafi followed these recommendations and also ordered Plaintiff to start strengthening exercises for her abdomen, back, quads, and gluteals.  [*Id.*; Doc. 25-3 at 14.]

---

[7]Dr. Rafi's affidavit states Plaintiff was seen in the ortho clinic on May 1, 2013.  [Doc. 25-2 at 4.]  However, the medical records list this encounter as occurring on May 3, 2013.  [Doc. 25-3 at 19.]

After Plaintiff complained that the Mobic was not helping her pain, Dr. Rafi ordered ibuprofen and discontinued Mobic. [Doc. 25-2 at 5; Doc. 25-3 at 11–12.] On October 3, 2013, almost fourteen months after the assault, Plaintiff reported to sick call with complaints of nerve pain and stated for the first time that the pain was caused by the August 5, 2012 assault. [Doc. 25-2 at 5; Doc. 25-3 at 11.] Plaintiff requested Neurontin, stating that it had been recommended by the ortho clinic doctor. [Doc. 25-2 at 5; Doc. 25-3 at 11.] Dr. Rafi ordered Neurontin on October 4, 2013, and ordered a walker to be used as needed on October 8, 2013. [Doc. 25-2 at 5; Doc. 25-3 at 10–11.]

On October 10, 2013, Plaintiff was seen in the doctor's clinic and reported that the pain in her legs and back had improved with Neurontin but she requested a wheelchair until she felt better. [Doc. 25-2 at 5; Doc. 25-3 at 10.] Dr. Rafi ordered a wheel chair for one month and instructed Plaintiff to return to the medical office in one month. [Doc. 25-2 at 5; Doc. 25-3 at 10.] On November 12, 2013, Plaintiff reported for her follow-up visit and requested approval for a walker with a seat that would be provided by her family; Dr. Rafi approved the request and also ordered that Plaintiff continue to use the wheelchair for one more month until the walker arrived. [Doc. 25-2 at 6; Doc. 25-3 at 8.] On November 19, 2013, Dr. Rafi increased Plaintiff's Neurontin dose after Plaintiff complained that it was not relieving all of the osteoarthritis pain. [Doc. 25-2 at 6; Doc. 25-3 at 7.] On December 12, 2013, Plaintiff asked to renew her wheelchair and a no standing pass and to increase her Neurontin dose; Dr. Rafi approved the wheelchair for another six months, ordered that Plaintiff could sit in the wheelchair instead of standing, and noted that Neurontin use has a protocol. [Doc. 25-2 at 6; Doc. 25-3 at 6.] On January 2, 2014, Dr. Rafi ordered an increase in Plaintiff's Neurontin. [Doc. 25-2 at 6; Doc. 25-3 at 4–5.] The clinical

16

pharmacist initially denied the request; however, on January 3, 2014, the pharmacist approved the increase in Neurontin.  [Doc. 25-2 at 6; Doc. 25-3 at 4.]  Dr. Rafi also ordered Tylenol for Plaintiff.  [Doc. 25-2 at 6; Doc. 25-3 at 4.]

On February 19, 2014, Plaintiff reported to sick call with complaints of pain in her left foot.  [Doc. 25-2 at 6–7.; Doc. 25-3 at 3–4.]  Dr. Rafi approved a new Ace wrap and renewed Plaintiff's medications except for ibuprofen.  [Doc. 25-2 at 7; Doc. 25-3 at 3–4.]  On February 25, 2014, Plaintiff reported to sick call, complaining that she could not put any pressure on her left foot and leg and that she could not walk.  [Doc. 25-2 at 7; Doc. 25-3 at 2.]  Plaintiff stated for the second time since the assault on August 5, 2012, that the pain was caused by another inmate assaulting Plaintiff.  [Doc. 25-2 at 7; Doc. 25-3 at 2.]  Plaintiff had no swelling, bruising, or redness in her left foot.  [Doc. 25-2 at 7; Doc. 25-3 at 2.]  Dr. Rafi discontinued Tylenol, approved a caregiver for Plaintiff if security agreed, and ordered ten days of ibuprofen.  [Doc. 25-2 at 7; Doc. 25-3 at 2.]  Plaintiff's medical records establish 103 encounters between August 5, 2012 and February 26, 2014, including multiple visits to providers outside of Graham.  [Doc. 25-3.]

Although Plaintiff may disagree with the treatment she received, Dr. Rafi has adequately addressed Plaintiff's medical needs.  Plaintiff was seen numerous time for her complaints of pain, including referrals to the ortho clinic; testing was performed; and Plaintiff was given different medications, a walker, a wheelchair, and a caregiver.  Plaintiff's disappointment in the treatment she received does not translate to deliberate indifference.  As explained above, the Constitution requires only that a prisoner receive adequate medical care; the Constitution does not mandate that a prisoner receive the medical treatment of her choice.  *See, e.g., Jackson*, 846 F.2d at 817.  Plaintiff has failed to

demonstrate a genuine issue of material fact remains as to whether Dr. Rafi acted with deliberate indifference. Accordingly, Defendants' motion for summary judgment should be granted with respect to the deliberate indifference to medical needs claim.[8]

### Failure to Protect

Plaintiff alleges Officer Foulks and Sergeant Tyler failed to protect Plaintiff from the assault by Inmate Moore. [Doc. 1.] Defendants argue Plaintiff cannot show she was incarcerated under conditions posing a substantial risk of serious harm, that Defendants were aware of the excessive risk, that the alleged deprivation was objectively sufficiently serious, or that Defendants did not take reasonable steps to intervene safely. [Doc. 25-1 at 8–12.] The Court agrees Defendants are entitled to summary judgment.

The Eighth Amendment protects inmates from physical harm at the hands of fellow inmates resulting from "the deliberate or callous indifference of prison officials to specific known risks of such harm." *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir.1987) (citing *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir.1979)). The United States Supreme Court and

---

[8]To the extent Plaintiff attempts to raise a claim of deliberate indifference to medical needs against Sergeant Tyler, a non-medical personnel defendant, for failing to get Plaintiff medical assistance [Doc. 1 at 6], her claim must fail. To establish a claim for denial of medical care against non-medical personnel, a prisoner must show that the non-medical personnel failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier*, 896 F.2d at 854. Moreover, because most prison officials are not trained medical personnel, they are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the course of treatment that the medical personnel deemed necessary and appropriate for the prisoner. *See id.* As stated above, Plaintiff was escorted to medical on August 5, 2012 after Inmate Moore hit Plaintiff in the right cheek. [Doc. 25-2 at 2–3; Doc. 25-3 at 24.] Accordingly, Plaintiff has made no showing that Sergeant Tyler engaged in the type of conduct required by controlling case law to establish a claim of deliberate indifference to medical needs against a non-medical defendant.

the Fourth Circuit have rejected a negligence standard in determining deliberate indifference.  *See Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Moore v. Winebrenner*, 927 F.2d 1312, 1315–17 (4th Cir.1991).  Thus, merely negligent behavior on the part of a prison official in failing to protect a prisoner from a risk of harm does not present a constitutional violation.  *See Whitley*, 475 U.S. at 319 ("[C]onduct that does not purport to be punishment at all must involve more than ordinary lack for due care . . . .  [O]bduracy and wantonness, not inadvertence . . . characterize the conduct prohibited by [the Eighth Amendment]."); *see also Moore*, 927 F.2d at 1316 (citing Fourth Circuit cases adopting the Supreme Court's reasoning in *Whitley*).  A plaintiff must allege facts to show he was exposed to a substantial risk of serious harm in that if nothing was done he was almost certain to face serious injury at the hands of other inmates.  *See Baze v. Rees*, 553 U.S. 35, 49–50(2008) (noting that the Eight Amendment protects against risk of future harm that is "'sure or very likely to cause serious illness and needless suffering,' and give rise to 'sufficiently imminent dangers" (citation omitted) (emphasis in original)).

Here, Plaintiff's alleged facts in support of her failure to protect claim do not rise to the level of a constitutional violation.  The only assault that Plaintiff alleges occurred was on August 5, 2012.  Officer Foulks avers that she observed Inmate Moore hitting another inmate on August 5, 2012.  [Doc. 25-6 at 2.]  As a result, Officer Foulks brought Inmate Moore to the office, where a corporal ordered Officer Foulks to put Inmate Moore in a holding cell.  [*Id.*]  While Officer Foulks was opening the holding cell door, Inmate Moore went into Plaintiff's cell and hit Plaintiff.  [*Id.*]  Officer Foulks immediately stopped Inmate Moore from hitting Plaintiff and placed Inmate Moore in the holding cell.  [*Id.* at 2–3.]

Officer Foulks was not aware of a history of violence or threat of violence against Plaintiff by Inmate Moore. [*Id.* at 3.] As soon as Officer Foulks was aware that Inmate Moore was assaulting Plaintiff, she separated them. [*Id.*] Sergeant Tyler avers that she was not present when the assault occurred, arrived after the assault and after Inmate Moore had been placed in the holding cell, and was unaware of any history of violence or threat of violence against Plaintiff by Inmate Moore. [Doc. 25-5 at 3.] Plaintiff has failed to establish she was exposed to a substantial risk of serious harm in that if nothing was done she was almost certain to face serious injury at the hands of other inmates. *See Baze v. Rees*, 553 U.S. 35, 49–50. Accordingly, Defendants' motion for summary judgment should be granted with respect to the failure to protect claim.

### Supervisory Liability

To the extent Plaintiff bases her claims against Sergeant Tyler, Warden Anderson, and Director Byars on the theory of supervisory liability, her claims are without merit. Because the doctrine of respondeat superior does not apply to § 1983 claims, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978), a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth elements necessary to establish supervisory liability under § 1983).[9] A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability:

---

[9]Such liability "is not premised upon *respondeat superior* but upon 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (quoting *Slakan v. Porter*, 737 F.2d 368, 372–73 (4th Cir. 1984)).

(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.[10]

*Id.* (citations omitted) (footnote added).

Here, Plaintiff has failed to establish a § 1983 claim against Sergeant Tyler, Warden Anderson, or Director Byars based on a theory of supervisory liability because Plaintiff has failed to establish that Sergeant Tyler, Warden Anderson, or Director Byars had actual or constructive knowledge of subordinates engaging in pervasive or widespread conduct that

---

[10] Stated differently,

"[A]bsent an allegation that a named defendant has personally subjected the plaintiff to a deprivation of his constitutional rights or has caused the conduct complained of or participated in some manner in the allegedly unlawful actions of his employee or subordinate officer, this Court has held a complaint insufficient to state a claim against such defendant under § 1983."

*Thompson v. McCoy*, 425 F. Supp. 407, 411 (D.S.C. 1976) (quoting *Knipp v. Weikle*, 405 F. Supp. 782 (N.D. Ohio 1975)). A plaintiff's burden to establish a claim based on supervisory liability is a heavy one; in fact, the Supreme Court in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), may have entirely abrogated supervisory liability in *Bivens* actions. *See Ashcroft*, 129 S. Ct. at 1957 (Souter, J., dissenting) ("Lest there be any mistake, . . . the majority is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely. The nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects."); *see also Jones v. Corr. Care Solutions*, No. 0:09-cv-269, 2010 WL 2639788, at *2 (D.S.C. June 7, 2010). A *Bivens* action "is the 'federal analog to suits brought against state officials under . . . § 1983.'" *Id.* at 1948 (quoting *Hartman v. Moore*, 547 U.S. 250, 254 (2006)). Therefore, the Supreme Court's reasoning may extend to abrogate supervisory liability in § 1983 actions as well as *Bivens* actions.

21

posed a risk of injury to detainees like Plaintiff. Rather, Plaintiff's claim is based on a single, isolated incident, which is insufficient to establish supervisory liability. *See Anderson v. Davies*, No. 3:10-2481-CMC-JRM, 2012 WL 1038663, at *2 (D.S.C. Mar. 8, 2012) ("'A pervasive risk of harm (under this principle) may not ordinarily be shown by pointing to a single incident or isolated incidents,' nor is a '(s)howing that individual officers violated a person's constitutional rights on an isolated occasion . . . sufficient to raise an issue of fact whether adequate training and procedures were provided.'" (internal citations omitted) (alterations in original)). Here, there is no evidence in the record of widespread abuses, which would establish that Sergeant Tyler, Warden Anderson, or Director Byars had knowledge of subordinates' conduct that violated Plaintiff's constitutional rights. Therefore, Sergeant Tyler,[11] Warden Anderson, and Director Byars are entitled to summary judgment on any claims brought against them under a theory of supervisory liability.

### *Failure to Train*

Likewise, any claims against Sergeant Tyler, Warden Anderson, and Director Byars for failure to train their subordinates are without merit. To allege a claim of failure to train,

---

[11]Sergeant Tyler is also entitled to summary judgment with respect to Plaintiff's conclusory allegation that Sergeant Tyler harasses Plaintiff. Courts have consistently found that alleged verbal harassment, disrespectful and assaultive comments did not violate the Eighth Amendment. *See Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (mere words, even verbal harassment, abuse and threats, without more, are not sufficient to state a constitutional deprivation under § 1983 or the *Bivens* doctrine), *cited in Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005) ("As to Henslee's claim that a jail employee incited other inmates to attack him, Henslee did not contend that any inmates in fact attacked him. Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983."); *Ajaj v. United States*, 479 F. Supp. 2d 501, 538 n.16 (D.S.C. 2007) ("To the extent Plaintiff is, in addition to physical abuse, also complaining about verbal harassment or taunting, even if there was evidence to support such a claim, no constitutional violation has been shown.").

22

there must be deliberate indifference by the defendant supervisor. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Deliberate indifference may be found where "the need for more or different training is so obvious, and the [failure to train is] likely to result in the violation of constitutional rights." *Id.* at 390. To impose supervisory liability under § 1983 for failure to train subordinates, a plaintiff must plead and prove that: (1) the subordinates actually violated the plaintiff's constitutional or statutory rights; (2) the supervisor failed to train properly the subordinates thus illustrating a "deliberate indifference" to the rights of the persons with whom the subordinates come into contact; and (3) the failure to train actually caused the subordinates to violate the plaintiff's rights. *Brown v. Mitchell*, 308 F.Supp.2d 682, 701 (E.D. Va. 2004) (citations omitted). "A section 1983 failure-to-train claim cannot be maintained against a governmental employer in a case where there is no underlying constitutional violation by the employee." *Young v. City of Mt. Ranier*, 238 F.3d 567, 579 (4th Cir. 2001). As stated above, in this case, Plaintiff is unable to establish an underlying constitutional violation by a subordinate employee; accordingly, Defendants' motion for summary judgment should be granted with respect to Plaintiff's failure to train claim.

### Qualified Immunity

Defendants also argue they are entitled to qualified immunity. [Doc. 25-1 at 16–19.] The Court agrees.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who

violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[ ] and . . . whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged

violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

As discussed above, Plaintiff's allegations fail to demonstrate Defendants violated Plaintiff's constitutional rights. Therefore, Defendants are entitled to qualified immunity.

**Motion for Temporary Restraining Order**

In her motion for TRO, Plaintiff states that Captain Amelia Williams, Lt. Bookman, Captain Broome, and "others" are retaliating against her, asks this Court to "intervene re: Captain Williams having and serving legal documents on Plaintiff in the future," and seeks a TRO "holding that the Defendants or their friends and colleagues can not interfere with the Plaintiff['s] First Amendment Rights." [Doc. 40.] Notably, Captain Amelia Williams, Lt. Bookman, and Captain Broome are not parties in this action. The Court must have personal jurisdiction over the parties to be enjoined; it may not enjoin defendants not before the court. *Zepeda v. United States I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983); *see also Wells v. Jacobs*, 2004 WL 1146028 (W.D.N.Y. 2004) (holding the court did not have personal jurisdiction over persons named in the TRO motion who were not defendants in the action). Therefore, based on the foregoing, Plaintiff's motion for TRO should be denied.

**CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion for summary judgment be GRANTED and Plaintiff's motion for temporary restraining order be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

November 7, 2014
Greenville, South Carolina